# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NCR Corporation,

   Plaintiff,

  v.           Case No. 1:05cv383

The ATM Exchange, Inc.,     Judge Michael H. Watson

   Defendant.


## OPINION & ORDER

This matter is before the Court upon Defendant The ATM Exchange, Inc.'s ("ATM Exchange") Motions to Dismiss.  (Doc. 6, 14)  By agreement of the parties, ATM Exchange's filing of its second Motion to Dismiss (Doc. 14) rendered the first Motion to Dismiss moot.  (See Docs. 10, 11)  Therefore, ATM Exchange's first Motion to Dismiss (Doc. 6) is denied as MOOT.

NCR is a provider of Automatic Teller Machine ("ATM") equipment, integrated hardware and software systems, as well as ATM maintenance and service.  (Doc. 14, ¶ 7)  NCR owns copyrights in certain software which is installed in NCR's ATMs.  (Id. ¶¶ 9-20)  ATM Exchange sells used and/or refurbished ATMs, including NCR ATMs.  (Id. ¶ 26)

In its Amended Complaint, NCR alleges copyright infringement, contributory copyright infringement, trademark infringement, trademark dilution, unfair competition, and violation of the Ohio Deceptive Trade Practices Act.  (Doc. 9)  In its Motion to Dismiss, ATM Exchange argues that (1) NCR has not stated a claim for copyright

infringement because it only received used ATMs and delivered used ATMs with the original, NCR-created software; (2) any claim NCR has for breach of its End-User Program License Agreement is against the party that breached the license, not ATM Exchange; (3) ATM Exchange cannot be liable for infringement based on the copy of NCR software code which is made (i.e., RAM copying) when ATM Exchange performs maintenance and repair on the machines; (4) the links on ATM's website for "Contact for NCR ATMs" and "Contact for NCR Parts and Repair" do not violate copyright laws; and (5) ATM Exchange cannot be held liable for any copyright infringement which occurred during production.

## A.    ANALYSIS

"A court should not dismiss a plaintiff's complaint under Rule 12(b)(6) unless, after construing the complaint in the light most favorable to the plaintiff and accepting all factual allegations as true, the court determines that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F.Supp.2d 942, 946 (S.D.Ohio 2003), *quoting Nelson v. Miller*, 170 F.3d 641, 649 (6th Cir. 1999) (citation omitted); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### 1.    Copyright Infringement (Counts I-IV)

ATM Exchange argues that its activities are lawful under 17 U.S.C. § 109(a), which provides that "the owner of a particular copy or phonorecord lawfully made . . . is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." NCR responds that the "first sale doctrine," which is codified at § 109(a), is not applicable because ATM Exchange is not an

"owner," and the protection afforded by § 109(a) does not extend to those merely in possession of a copy. ATM Exchanges argues that the sale of ATM hardware and software from NCR to NCR's customer would be a transfer of ownership of the copy of the software to that customer.

Under the first sale doctrine, once a copyright holder has transferred its "material ownership" to another, the holder is divested of the right to control future transfers of particular copies of the copyrighted work. *Too, Inc. v. Kohl's Dept. Stores, Inc.*, 2002 WL 31409852, *3 (S.D.Ohio 2002), *citing Columbia Pictures Industries, Inc. v. Aveco, Inc.*, 800 F.2d 59, 63-64 (3rd Cir. 1986). However, under 17 U.S.C. § 109(d), the first sale doctrine does not "extend to any person who has acquired possession of the copy or phonorecord from the copyright owner, by rental, lease, loan, or otherwise, without acquiring ownership of it." Several district courts have held that a software manufacturer's distribution of copies of its software to licensed distributors did not constitute the "first sale" of copies. *Adobe Systems, Inc. v. Stargate Software Inc.*, 216 F.Supp.2d 1051 (N.D. Cal 2002); *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F.Supp. 1310 (N.D.Ill. 1990); *Microsoft Corp. v. Harmony Computers & Electronics, Inc.*, 846 F.Supp. 208 (E.D.N.Y. 1994); *see also Quality King Distrib., Inc. v. L'Anza Research Int'l, Inc.*, 523 U.S. 135, 146-47 (1998) ("[T]he first sale doctrine would not provide a defense to [an] action against any nonowner such as a bailee, a licensee, [or] a consignee."); *but see Softman Products Company v. Adobe Systems Inc.*, 171 F.Supp.2d 1075, 1086 (C.D.Cal. 2001) ("If a transaction involves a single payment giving the buyer an unlimited period in which it has a right to possession, the transaction is a sale.") The alleged infringer bears the burden of tracing the chain of

1:05cv383

title to prove that the first sale doctrine applies.  *Too, Inc.*, 2002 WL 31409852, at *3, *citing Microsoft v. Harmony Computers & Elecs., Inc.*, 846 F.Supp. at 212-14.

Here, NCR alleges that its software is distributed subject to a license agreement. Accepting this factual allegation as true, the Court finds that the first sale doctrine is inapplicable, and NCR's copyright claims are not subject to dismissal on this basis.

ATM Exchange also argues that it cannot be held liable for its refurbishing activities which cause NCR's software to be copied to the random access memory ("RAM") of the personal computer.  ATM Exchange maintains that 17 U.S.C. § 117(c) permits such copies to be made for "maintenance or repair" of the machine.  However, NCR's Amended Complaint describes acts by ATM Exchange which go beyond "maintenance or repair."  NCR alleges that ATM Exchange copied NCR's software when it was preparing for the testing of an upgrade to that software.  (Doc. 9 ¶ 59) Moreover, 17 U.S.C. § 117(c) applies to copies "made solely by virtue of the activation of a machine that lawfully contains an authorized copy of the computer program."  NCR alleges that the copies of NCR's software which are in ATM Exchange's possession are not "authorized copies."  (Id. ¶¶ 118-119)  *See ISC-Bunker Ramo Corp.*, 765 F.Supp. at 1332 (holding that 17 U.S.C. § 117 gives the lawful owner of copyrighted software the limited right to make certain types of copies of software for its own internal use on its own machines, but affords no immunity whatsoever to infringers who have come into unauthorized possession of the software); *Microsoft Corp. v. Sellers*, 411 F.Supp.2d 913, 918 (E.D.Tenn. 2006) (holding that copyright was violated where unauthorized copies of software programs were installed onto hard drives of computers and sold). Therefore, NCR's copyright claims are not dismissed on this basis, and ATM

Exchange's motion to dismiss is denied as to Counts I-IV.

## 2. Trademark claims (Counts V-IX)

ATM Exchange argues that its use of "NCR" on its website is not trademark infringement because it is not likely to cause confusion or cause dilution of NCR's mark. ATM Exchange also points out that its website no longer includes the pages upon which NCR's claims are based.

In a trademark infringement case, a court should determine whether a likelihood of confusion exists by examining and weighing the following factors: (1) the strength of the senior mark; (2) relatedness of the goods and services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) likely degree of purchaser care; (7) the intent of the defendant in selecting the mark; and (8) the likelihood of expansion of the product lines. *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). Likewise, to succeed on a false designation of origin claim, a plaintiff must show that the false designation creates a likelihood of confusion. *Mountain Top Beverage Group, Inc. v. Wildlife Brewing N.B., Inc.*, 338 F.Supp.2d 827, 831 (S.D.Ohio 2003), *citing Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998); *see also Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (6th Cir. 1996) (explaining that a federal false designation is simply a species of unfair competition). The question of whether there is a likelihood of confusion is a mixed question of fact and law. *Curcio Webb LLC v. National Ben. Programs Agency, Inc.*, 2006 WL 47506, *7 (S.D.Ohio 2006), *citing Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). Claims for trademark infringement and false designation of origin under the

Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same "likelihood of confusion" standards as their federal counterparts. *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694 (6th Cir. 2003), *citing Daddy's Junky Music*, 109 F.3d at 288; *see also Worthington Foods, Inc. v. Kellogg Co.*, 732 F.Supp. 1417, 1431 (S.D.Ohio 1990) (explaining that the elements that tend to show trademark infringement and unfair competition under the Lanham Act are appropriate for assessing a trademark infringement action under Ohio common law). Therefore, the Court finds that NCR's claims for trademark infringement, false designation and Ohio unfair competition, as alleged, are inappropriate for resolution upon a motion to dismiss.[1]

In addition, the Court finds that ATM Exchange's alleged discontinuation of its use of NCR's mark on its website does not absolve it of liability. *Accord Audi AG v. D'Amato*, 381 F.Supp.2d 644, 656 (E.D.Mich. 2005) (finding that liability for trademark infringement and domain name cyberpiracy may be based upon defendant's past use of a domain name), *citing Shields v. Zuccarini*, 254 F.3d 476, 486 (3d Cir. 2001). Accordingly, ATM Exchange's motion to dismiss Counts V-IX is denied.

### 3. Copyright Infringement of KAL Products (Counts X-XIII)

In its Amended Complaint, NCR states that it owns copyrights in its APTRA XFS and S4i software. (Doc. 9 ¶ 14-17) NCR explains that this software requires an

---

[1]The Sixth Circuit has indicated that the "likelihood of confusion" test does not govern federal dilution claims. *See K'Arsan Corp. v. Christian Dior Perfumes, Inc.*, 1998 WL 777987, *7 (6th Cir. 1998); *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003) ("Dilution law, unlike traditional trademark infringement law . . . is not based on a likelihood of confusion standard . . . "). Because ATM Exchange only argued that NCR cannot show a likelihood of confusion, the Court reads ATM Exchange's Motion as only addressing NCR's trademark infringement and false designation claims, and not NCR's dilution claim.

upgrade because of new encryption standards. (Id. ¶ 9) NCR alleges that Korala

Associates Limited ("KAL"), a software development company, along with ATM

Exchange has developed, marketed, and sold such an upgrade. (Id. ¶¶ 43-46, 49-56,

127-130) NCR alleges that ATM Exchange either sold or distributed to KAL a NCR

ATM which had an unlicensed copy of NCR's APTRA XFS or S4i software loaded on it.

(Doc. 9 ¶ 43) NCR alleges that ATM Exchange, either alone or in conjunction with KAL,

has engaged in the unauthorized operation of NCR ATMs and software in order to

develop the upgrade for the software. (Id. ¶¶ 118-19) NCR alleges that ATM

Exchange and KAL are marketing, soliciting orders, and distributing the KAL upgrade,

thereby infringing NCR's copyrights. (Id. ¶¶ 116, 117, 121)

 ATM Exchange argues that it cannot be held liable for any copyright infringement

which occurred during the production of KAL's software. In response, NCR cites to

caselaw which stands for the proposition that a final product that does not contain any

of the original product's code is considered infringing to the extent that it was derived

from an infringing course of conduct. ATM Exchange replies that these cases involving

"intermediate copying" do not apply to a party, like ATM Exchange, who did not do any

copying, and the "intermediate copying" theory is not applicable to distribution.

 Clearly, ATM Exchange could be held liable for contributory infringement. As the

Supreme Court has explained:

> One infringes contributorily by intentionally inducing or encouraging direct
> infringement, and infringes vicariously by profiting from direct infringement
> while declining to exercise a right to stop or limit it. Although "[t]he Copyright
> Act does not expressly render anyone liable for infringement committed by
> another," these doctrines of secondary liability emerged from common law
> principles and are well established in the law.

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2776 (2005) (citations omitted). ATM Exchange does not appear to argue to the contrary.

The "intermediate copying" concept has been recognized in cases involving computer programs. *Stromback v. New Line Cinema*, 384 F.3d 283, 299-300 (6th Cir. 2004), *citing Madrid v. Chronicle Books*, 209 F.Supp.2d 1227, 1236 (D.Wyo. 2002). Courts have held that intermediate copying can constitute copyright infringement even when the end product did not itself contain copyrighted material. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602-603 (9th Cir. 2000), *cert. denied*, 531 U.S. 871 (2000), *citing Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518-19 (9th Cir. 1992). NCR has made sufficient allegations to support a claim under an "intermediate copying" theory. These allegations state that ATM Exchange, "either alone or in conjunction with KAL" committed copyright infringement. Whether or not ATM Exchange performed any of the copying is a question of fact, and is not appropriate for resolution on a motion to dismiss.

Finally, while the Court does not disagree that intermediate copying "infringes on the reproduction right" of a copyright holder, NCR has presented allegations which conform to the "typical copyright infringement case" where the infringer violates both the reproduction right of 17 U.S.C. §106(1) and the distribution right of 17 U.S.C. §106(3). *See* Terril Lewis, *Reverse Engineering of Software: An Assessment of the Legality of Intermediate Copying*, 20 Loy. L.A. Ent. L. Rev. 561, 569 (2000). Accepting these allegations as true, the Court denies ATM Exchange's motion to dismiss Counts X-XIII.

Accordingly, it is hereby ordered as follows:

1.     ATM Exchange's first Motion to Dismiss (Doc. 6) is **DENIED as MOOT**.

1:05cv383

2.    ATM Exchange's second Motion to Dismiss (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

_____
Michael H. Watson, Judge
United States District Court